LITCHFIELD CAVO LLP
Tico A. Glavas
AZ Bar # 028812
7250 North 16th Street
Suite 105
Phoenix, AZ 85020
602.786.6499 P
602.429.8499 F
glavas@litchfieldcavo.com

LITCHFIELD CAVO LLP
James M. Branit (*pending pro hac vice*)
Natasha Singh (*pending pro hac vice*)
Kristopher Fernandez (*pending pro hac vice*)
303 W. Madison Street
Suite 300
Chicago, Illinois 60606
(312) 781-6597
branit@litchfieldcavo.com
singh@litchfieldcavo.com
fernandez@litchfieldcavo.com
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT OF ARIZONA**

| | |
|---|---|
| CARLOS BARRAZA TREVINO, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GECU FEDERAL CREDIT UNION,<br><br>Defendant. | Case No.: 2:25-cv-00625-SMB<br><br>**DEFENDANT GECU FEDERAL CREDIT UNION'S MOTION TO COMPEL ARBITRATION** |

Defendant GECU Federal Credit Union ("GECU"), by and through its undersigned counsel, and pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, hereby moves this

- 1 -
DEFENDANT GECU FEDERAL CREDIT UNION'S MOTION TO COMPEL ARBITRATION

Court for an order compelling arbitration of all claims asserted in this action. This Motion is supported by the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION

This lawsuit arises entirely from Carlos Barraza Trevino's ("Plaintiff") relationship with GECU and his allegation that he was improperly denied an auto loan based on his alienage. Crucially, Plaintiff agreed to arbitrate the very claims he now seeks to litigate. Consistent with the strong federal policy favoring the enforcement of arbitration agreements, this Court should compel arbitration and hold Plaintiff to the terms of the arbitration agreement to which he expressly consented.

To compel arbitration, the Court need only determine (1) whether the arbitration agreement constitutes a valid, enforceable contract under Arizona law and (2) whether Plaintiff's claims fall within the scope of the arbitration agreement. Applying this test to Plaintiff's claims, the arbitration agreement before this Court satisfies both elements.

*First*, the arbitration agreement, governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et. seq.*, is a valid contract under Arizona law. GECU extended an offer to arbitrate to Plaintiff by mail, and Plaintiff accepted this offer by failing to opt out and continuing to use his GECU account. The agreement is supported by valid consideration, as both parties mutually agreed to resolve their disputes through arbitration.

*Second*, Plaintiff's claims fall squarely within the broad scope of the arbitration agreement. The plain language of the arbitration agreement provides that any claims or disputes "arising out of or relating to" Plaintiff's account with GECU or "the application for, or the approval or establishment of your account" are subject to mandatory arbitration.

Plaintiff's allegations of alienage discrimination stem directly from his efforts to obtain an auto loan account through his GECU account. Thus, the arbitration agreement indisputably encompasses the dispute at issue.

Accordingly, because the arbitration agreement is valid and Plaintiff's claims fall within its broad scope, this Court should compel arbitration and dismiss Plaintiff's claims in their entirety.

## II.  STATEMENT OF FACTS

### A.  Plaintiff Agreed to be Bound by GECU's Membership Agreement.

GECU is a credit union and not a bank. These are very different entities. While banks are designed to earn profits to enrich their shareholders, credit unions are cooperatives – owned by their members – whose sole, mission-driven purpose is to benefit their member-owners by using income derived from their operations for member-centric purposes such as to reinvest in their organization, pay above market interest rates on deposits, and offer below market interest rates on loans.[1] Declaration of Nicole Bradford ("Bradford Decl.") ¶ 3. Thus, the democratically elected management of a credit union are incentivized to serve its members in a way that best benefits the membership, not to generate shareholder profit. As such, there is no small irony here that Plaintiff seeks to bring a purported action on behalf of his fellow owners, the consequence of which, after attorney's fees and costs of class

---

[1] *See* NCUA Opinion Letter 04-0147, National Credit Union Administration, at 3 (Feb. 10, 2004), available at: https://www.ncua.goviregulation-supervision/legal-opinions/2004/preemption-new- mexico-home-loan-protection-act ("[c]redit unions are nonprofit cooperatives, owned by their members and democratically controlled, that may only lend and pay dividends to their members and, as such, ***are disinclined by their nature and structure to engage in the kinds of practices regarded as predatory or abusive***") (emphasis added).

administration are paid, may be to actually harm those other owners' interest in the cooperative. In essence, Plaintiff's putative class would be suing itself as owners of the credit union, thereby only benefiting the class lawyers and other outside professionals, not the member-owners themselves.

On June 19, 2015, Plaintiff opened a checking account and became a GECU member. Bradford Decl. ¶ 6. When he became a member, Plaintiff agreed to comply with GECU's Terms and Conditions ("Membership Agreement") and acknowledged receipt of the agreement. *Id*. The Membership Agreement in effect at that time – dated November 2014 – stated that GECU "may add to, change or delete the terms of this Agreement . . . subject to prior notification required by applicable law." *Id*. ¶ 7.

### B. GECU and its Members Adopted a New Arbitration Provision and Class Action Waiver Agreement in September 2021, Requiring That All Claims be Arbitrated on an Individual Basis.

In September 2021, GECU extended to its members an offer to enter into a new arbitration agreement with an opt-out provision and class action waiver agreement ("Arbitration Agreement"). *Id*. ¶ 8.

#### 1. GECU's Offer of Arbitration.

The subject Arbitration Agreement informs members of all necessary information, including what arbitration is and how it works, the arbitration process, the types of disputes it covers, any limitations, and who pays for arbitration. Bradford Decl. Ex. 3, Addendum, pp.1-4.

The Arbitration Agreement begins by emphasizing the importance of the provision, stating in all capitalized letters: "THIS SECTION CONTAINS IMPORTANT INFORMATION REGARDING YOUR ACCOUNTS AND ALL RELATED SERVICES."

*Id*. at 1 (emphasis in original). Included in this "important information" is notice to members of what they give up by agreeing to arbitrate: "EITHER [the member] OR [GECU] CAN REQUIRE THAT ANY DISPUTES BE RESOLVED BY BINDING ARBITRATION," which "REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY TRIAL AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION . . ." *Id*. (emphasis in original).

> The Arbitration Agreement broadly defines "Disputes Covered by Arbitration" as:
>
> Claims or disputes between you and us arising out of or relating to your Account(s), transactions involving your Account(s), safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. Disputes also include claims or disputes relating to the enforceability, validity, scope or interpretation of any of these arbitration provisions. Any questions about whether disputes are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. All such disputes are referred to in this section as "Claims".

*Id.* at 1-2. The agreement provides only two limited exceptions to arbitration: (1) claims brought in small claims court, and (2) claims arising from a person's status as a borrower under a loan agreement. *Id*.

The Arbitration Agreement also provides that any arbitration "or court proceeding" must be on an individual basis. Under a heading title, "No Class Action or Joinder of Parties," the agreement states:

> YOU ACKNOWLEDGE THAT YOU AND WE AGREE THAT NO CLASS ACTION, CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ACTION, OR OTHER PROCEEDING WHERE

SOMEONE ACTS IN A REPRESENTATIVE CAPACITY, MAY BE PURSUED IN ANY ARBITRATION OR IN ANY COURT PROCEEDING, REGARDLESS OF WHEN THE CLAIM OR CAUSE OF ACTION AROSE OR ACCRUED, OR WHEN THE ALLEGATIONS OR FACTS UNDERLYING THE CLAIM OR CAUSE OF ACTION OCCURRED. Unless mutually agreed to by you and us, claims of two or more persons may not be joined, consolidated, or otherwise brought together in the same arbitration (unless those persons are joint account holders or beneficiaries on your account and/or related accounts, or parties to a single transaction or related transaction), whether or not the claim may have been assigned.

*Id.* (emphasis in original).

Finally, the Arbitration Agreement provides members with instructions on how to opt out of the agreement. *Id.* at 2. Specifically, to reject the offer to arbitrate, the Arbitration Agreement explains that the member must send written notice to GECU of his or her opt out to the address provided within "30 days of first being sent or offered any copy of our Terms and Conditions with an Arbitration Provision in it, whichever is sooner." *Id.* Moreover, the Arbitration Agreement advises members that if members do not opt out, "this agreement to arbitrate will apply without limitation." *Id.* at 3.

### 2. Plaintiff Accepted GECU's Offer to Arbitrate by Failing to Opt Out While at the Same Time, Continuing to Use His Account.

On September 22, 2021, GECU sent a letter to its members notifying them of the Arbitration Agreement (the "Notice"), which included a full-text copy of the Arbitration Agreement. Bradford Decl. ¶ 9; *see also* Bradford Decl. Ex. 4. The Notice was sent via U.S. Mail to the statement mailing address on file for each member, including Plaintiff. *Id.* No additional information or documents were included in this mailing. *Id.* The Notice advised Plaintiff – and all other then-current GECU members – that GECU was adopting the Arbitration Agreement and that they would have until October 22, 2021 to exercise their

right to opt out. *Id*. ¶ 10. The Notice explained that "[i]nstructions on how to opt out are included in the [Arbitration Agreement] provided with this letter" and that the "full text of these provisions are attached." *Id*. ¶ 11. The full-text Arbitration Agreement was included on the next page, immediately following the one-page Notice. *Id*. The instructions provided in the Arbitration Agreement stated that to reject the offer to arbitrate, the member must "send . . . written notice to [GECU]" of his or her opt out to the address provided in the Notice. *Id*. The Notice further advised that continued use or maintenance of the member's account would constitute consent to the Arbitration Agreement. *Id*. ¶ 10.

GECU never received any notice from Plaintiff that he wished to exercise her right to opt out of the Arbitration Agreement. *Id*. ¶¶ 13, 14. Instead, Plaintiff continued to use his GECU account and to accept the benefits of GECU's services. *Id*.

### C. Plaintiff's Claims Relate to His Account and Relationship with GECU.

Despite the existence of an agreement to arbitrate, Plaintiff filed his one-count Complaint on February 24, 2025, alleging alienage discrimination in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Compl. ¶¶ 43-52. Specifically, Plaintiff claims GECU unlawfully denied his access to certain credit and loan products based on his alienage. *Id*. All of Plaintiff's claims arise from the same set of operative facts and relate to his account and relationship with GECU.

## III. ARGUMENT

### A. This Court Should Compel Arbitration Pursuant to the Parties' Agreement.

Federal and Arizona law strongly favor arbitration. Indeed, the U.S. Supreme Court has already ruled that such arbitration provisions – including any waiver of any class action

DEFENDANT GECU FEDERAL CREDIT UNION'S MOTION TO COMPEL ARBITRATION

– are valid and binding. This Court should compel individual arbitration of Plaintiff's claims and dismiss the action because Plaintiff agreed to arbitrate his claims on an individual basis and his claims are arbitrable under the language of the Arbitration Agreement.

        1.      <u>The Federal Arbitration Act Controls and Requires Arbitration</u>.

Nearly 100 years ago, Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, to overcome judicial resistance to arbitration. *See Buckeye Check Cashing, Inc. v. Cardegena*, 526 U.S. 440, 441 (2006). In doing so, "Congress declared a national policy favoring arbitration," preempting state laws requiring judicial forums for disputes covered by arbitration agreements. *Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984). The FAA reflects the principle that arbitration is fundamentally a matter of contract, placing arbitration agreements on equal footing with other contracts and requiring courts to enforce such agreements according to their terms. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Consistent with this goal, the FAA affirms that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It allows no room for discretion, requiring courts to "direct the parties to proceed to arbitration" when a valid agreement is in place. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The FAA establishes that any ambiguities or doubts as to the scope of an arbitration agreement are to be resolved in favor of arbitration. *See Mastorbuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).

While federal law and the FAA controls, Arizona law also embodies a strong public policy in favor of arbitration. *See e.g., Jones v. Gen. Motors Corp.,* 640 F. Supp. 2d 1124, 1133 (D. Ariz. 2009) ("Arizona has a strong policy of favoring arbitration agreements"); *Foy v. Thorp,* 186 Ariz. 151, 153, 920 P.2d 31, 33 (Ct. App. 1996) ("Arizona law favors

arbitration, both statutorily . . . and by the courts as a matter of public policy"). In effectuating this strong public policy in favor of arbitration, Arizona courts, like federal courts, must resolve all doubts in favor of arbitration. *Payne v. Pennzoil Corp.,* 138 Ariz. 52, 55–56, 672 P.2d 1322, 1325–26 (Ct. App. 1983) ("An agreement containing provisions for arbitration should be liberally construed with any doubt resolved in favor of arbitration."); *Carbonneau v. Am. Fam. Mut. Ins. Co.,* No. 06-1853-PHX-DGC, 2006 WL 3257724, at *1 (D. Ariz. Nov. 9, 2006) ("when considering whether or not to compel arbitration, any doubts concerning the scope of arbitrable issues are to be resolved in favor or arbitration") (citation omitted).

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement. 9 U.S.C. § 4. The party seeking to compel arbitration must satisfy a two-pronged test: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the claim in dispute falls within the scope of the arbitration agreement. *Geier v. m-Qube Inc.,* 824 F.3d 797, 799 (9th Cir. 2016). When, as here, both conditions are met, the FAA "leaves no place for the exercise of discretion," but instead mandates that the Court "*shall* direct the parties to proceed to arbitration." *Dean Witter*, 470 U.S. at 218 (emphasis in original); *see also Carbonneau,* 2006 WL 3257724, at *1 ("A court is 'very limited in its power to refuse a motion to compel arbitration'") (citation omitted).

    2.    <u>Plaintiff Entered into a Valid and Binding Arbitration Agreement</u>.

Plaintiff entered into a valid and binding contract with GECU, which specifically included his express agreement to submit any "[c]laims or disputes between [Plaintiff] and [GECU] arising out of or relating to [Plaintiff's] Account(s) . . . and any related service with

[GECU]" and "the application for, or the approval or establishment of your account" – including all of the claims asserted in this case – to arbitration and to waive any right to proceed with a class action. Bradford Decl. Ex. 3, Addendum, p. 1.

The FAA specifies that valid contracts to arbitrate shall be enforced, 9 U.S.C. § 2, but state law applies in determining whether a valid arbitration agreement has been formed. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Franklin v. Cmty. Reg'l Med. Ctr.,* 998 F.3d 867, 874 (9th Cir. 2021) ("Arbitration agreements are contracts, and the Federal Arbitration Act does not 'purport[ ] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them.'") (citation omitted). Accordingly, an arbitration agreement is enforceable if it includes the essential elements of a contract under Arizona law: offer, acceptance, and consideration. *Cooper v. Youngtown Health Inc.,* No. 1 CA-CV 19-0854, 2020 WL 7024347, at *2 (Ariz. Ct. App. Nov. 24, 2020). Here, the Arbitration Agreement easily meets all of these contractual requirements.

GECU offered Plaintiff – and all GECU members – the right to arbitrate any dispute he might have with the credit union. Bradford Decl. Ex. 3, Addendum, pp. 1-4. GECU sent a notice to Plaintiff that it was offering him an agreement to arbitrate by mailing him a notice including a full-text copy of the Arbitration Agreement. Bradford Decl. ¶ 9. The Arbitration Agreement explicitly stated that Plaintiff could reject the Arbitration Agreement only by opting out within thirty days of receiving the notice – that is, by providing written notice of his opt out to the address provided. *Id.* Ex. 4 at 2. Moreover, the Notice advised Plaintiff that if he did not opt out and instead continued to use his account, his conduct would act as his consent to arbitration. *Id.* at 1.

Thus, Plaintiff had two clear options: (1) to reject the offer to arbitrate by opting out or, (2) to accept the offer by failing to opt out and continuing to use his GECU account, thereby agreeing to be bound by the Arbitration Agreement. Plaintiff chose the latter. These actions are the classic definition of offer and acceptance.

Courts have consistently held that a failure to opt out constitutes acceptance. *See e.g., Cornell v. Desert Fin. Credit Union,* 254 Ariz. 477, 484, 524 P.3d 1133, 1140 (2023) ("failure to opt out of proposed modifications constitutes acceptance") (citing cases); *Johnson v. CVS Corp.,* No. 2:16-CV-10429, 2016 WL 11601248, at *2 (E.D. Mich. June 10, 2016) ("By failing to opt-out, [plaintiff] accepted the mutual agreement to arbitrate legal disputes arising from her employment"); *Castro v. Macy's, Inc.*, No. C 16-5991 CRB, 2017 WL 344978, at *4 (N.D. Cal. Jan. 24, 2017) (holding that plaintiff "implicitly agreed to Macy's arbitration policy by failing to affirmatively opt out"); *Cir. City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (finding that plaintiff "assented to the [arbitration provision] by failing to exercise his right to opt out")*; see also Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 211-13 (1st Cir. 2019); *Gezu v. Charter Communications*, 17 F.4th 547, 554 (5th Cir. 2021); *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 675-76 n.2 (5th Cir. 2006); *Uszak v. AT&T Mobility Services, LLC*, 658 Fed.Appx. 758, 763 (6th Cir. 2016); *Tilman v. Macy's Inc.*, 735 F.3d 453, 460-61 (6th Cir. 2013); *Legair v. Circuit City Stores, Inc.*, 213 F.3d.Appx. 436, 439 (6th Cir. 2007); *Gupta v. Morgan Stanley Smith Barney LLC*, 934 F.3d 705, 713 (7th Cir. 2019); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002); *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014); *Providence Nat. Bank v. Conner*, 898 So.2d 714 (Ala. 2004); *Gentry v. Superior Court*, 42 Cal.4th 443,

467-68, 165 P.3d 556, 571 (2007); *Edelist v. MBNA Nat'l Bank*, 790 A.2d 1249, 1258 (Sup. Ct. Del. 2001); *Tsadilas v. Providian Nat. Bank*, 13 A.D.2d 190, 190, 786 N.Y.S.2d 478, 480 (App. Div. 2004); *Canteen v. Charlotte Metro Credit Union*, 286 N.C. App. 539, 451, 881 S.E.2d 753, 755 (2022).

Finally, there was consideration for the Arbitration Agreement because both parties agreed that arbitration would be the method by which to settle disputes. Under Arizona law, it is axiomatic that mutual promises are sufficient consideration to support a contract. *Lessner Dental Lab'ys, Inc. v. Kidney,* 16 Ariz. App. 159, 160, 492 P.2d 39, 40 (1971) ("Because the contract here in question contains mutual promises and is in writing, we have no difficulty in finding adequate consideration on its face."). Indeed, courts recognize that mutual promises to arbitrate claims constitute adequate consideration for an enforceable arbitration agreement. *See e.g., Peak v. Forever Living Prods. Int'l, Inc.*, No. CV 11-903-PHX-SRB, 2011 WL 13174334, at *4 (D. Ariz. Sept. 30, 2011) ("Under this agreement, there was a *mutual* promise to submit disputes to arbitration, which is sufficient consideration.") (emphasis in original); *Bufford v. VXI Glob. Sols. LLC,* No. CV-20-00253-TUC-RCC, 2021 WL 229240, at *3 (D. Ariz. Jan. 22, 2021) ("The parties' consideration consisted of the mutual obligation to arbitrate"). Here, Plaintiff and GECU each promised to arbitrate their disputes and to be bound by the arbitration process. Bradford Decl. Ex. 3, Addendum, pp. 1-4. Therefore, the Arbitration Agreement is an enforceable contract under Arizona law, and Plaintiff is bound by its terms.

### 3. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

Not only is the arbitration agreement between the parties legally enforceable, but Plaintiff's dispute relates solely to his account and relationship with GECU. The claims

raised here are expressly the type of claims that the parties agreed to arbitrate. By agreeing to submit to arbitration any "claims or dispute arising out of or relating to" his account or any related services with GECU or "the application for, or the approval or establishment of your account", the parties agreed that the Arbitration Agreement would encompass any and all claims arising between them. *See e.g., In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp. 2d 385, 404-05 (S.D.N.Y. 2003) (broad provision requiring arbitration of "any claim, claim, or controversy . . . arising out of relating to" the cardholder agreement or plaintiffs' accounts covered plaintiffs' antitrust claims related to their accounts); *In re Verisign, Inc., Derivative Litig.,* 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) ("The arbitration provision is extremely broad, and covers not just services provided under the agreement, but also 'any other services provided'"); *see also Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999) ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly . . . reach[ing] every dispute between the parties").  When an arbitration agreement contains broad language, the strong presumption in favor of arbitrability is strengthened. *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Loc. 752, Int'l Bhd. of Teamsters,* 989 F.2d 1077, 1080 (9th Cir. 1993).

  Here, there is no question that the Arbitration Agreement encompasses Plaintiff's dispute, especially given the FAA's (and Arizona's) overriding presumption of arbitrability. The Complaint alleges a claim for alienage discrimination under federal statute, 42 U.S.C. § 1981. Compl. ¶¶ 43-52. Specifically, Plaintiff alleges that GECU denied him access to its credit and loan account due to his alienage. *Id*. ¶ 2. Each aspect of Plaintiff's lawsuit is about – and only about – his account and relationship with GECU. *See* Compl. ¶¶ 15

(acknowledging being a GECU member and opening a checking account); *id*. ¶¶ 12, 16-18 (discussing his effort to access various financial products, including an auto loan, offered by GECU in connection with his account); *id.* ¶¶ 49-50 (challenging GECU's denial of his application for a credit or loan account). Accordingly, the Arbitration Agreement encompasses Plaintiff's claims and must be arbitrated. *See Charles v. Portfolio Recovery Assocs., LLC,* No. 22-35613, 2024 WL 1672350, at *2 (9th Cir. Apr. 18, 2024) (finding arbitration clause at issue broad, covering "any claim, dispute, or controversy" that "arises from or relates to" plaintiff's credit card agreement or his account).

        4.    <u>The Arbitration Agreement Clearly Delegates Threshold Issues of Arbitrability to the Arbitrator.</u>

Even if there was any question as to whether Plaintiff's claims are arbitrable (there is not), such threshold issues are expressly delegated to the arbitrator to decide. The United States Supreme Court has repeatedly held that where an agreement delegates to an arbitrator the threshold questions of arbitrability, validity, or existence, such agreements must be enforced and decided by the arbitrator in the first instance. *Rent-A-Center, W, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Courts have found that an arbitration agreement's incorporation of arbitration rules which delegate questions of arbitrability to the arbitrator to be sufficient to delegate questions of arbitrability. *See Preston v. Ferrer*, 552 U.S. 346, 361-62 (2008) (where contract incorporated AAA rules, which rules delegate to arbitrator questions of arbitrability, validity and enforceability, parties agreed to delegate issues of arbitrability to arbitrator).

Here, the Agreement expressly states that the disputes subject to arbitration "include claims relating to the enforceability or interpretation of any of these arbitration provisions."

It therefore expressly delegated the threshold issues of arbitrability to the arbitrator. Furthermore, the Agreement states that "arbitration must be filed with one of the following neutral arbitration forums and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association ('AAA') or JAMS." Bradford Decl. Ex. 3, Addendum, p. 3. Both sets of rules authorize the arbitrator to decide questions of arbitrability. *See* AAA Rule R-14(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim");[2] JAMS Rule 11(b) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator").[3] Accordingly, to the extent Plaintiff even attempts to contest whether the Arbitration Agreement applies, that question must be decided by the arbitrator and this case must be dismissed.

5. <u>The Court Should Compel Individual Arbitration or Litigation</u>.

This Court should further dismiss Plaintiff's class action claims and order the parties to arbitrate the Complaint solely on an individual basis as Plaintiff agreed to a class action waiver. The United States Supreme Court has consistently stressed that the FAA allows parties to "specify with whom they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. Animal Feeds Intl. Corp.*, 559 U.S. 662, 683 (2010); *Am. Express Co. v. Italian Colors Rest.*

---

[2] The AAA Consumer Rules can be found here: https://adr.org/sites/default/files/Consumer%20Rules.pdf (last accessed April 23, 2025).
[3] The JAMS Rules can be found here: https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11 (last accessed April 23, 2025).

570 U.S. 228, 223 (2013); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011). The Supreme Court has also made clear that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen*, 559 U.S. at 684.

Here, the Arbitration Agreement contains a valid and unambiguous class action waiver, prohibiting class arbitration and class litigation in court. The Arbitration Agreement it provides, in plain, all capitalized text that: "THIS SECTION CONTAINS IMPORTANT INFORMATION . . . ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING . . . THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING." Bradford Decl. Ex. 3, Addendum, p. 1 (emphasis in original). The Arbitration Agreement then conspicuously states:

> No Class Action or Joinder of Parties.
>
> YOU ACKNOWLEDGE THAT YOU AND WE AGREE THAT NO CLASS ACTION, CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ACTION, OR OTHER PROCEEDING WHERE SOMEONE ACTS IN A REPRESENTATIVE CAPACITY, MAY BE PURSUED IN ANY ARBITRATION OR IN ANY COURT PROCEEDING, REGARDLESS OF WHEN THE CLAIM OR CAUSE OF ACTION AROSE OR ACCRUED, OR WHEN THE ALLEGATIONS OR FACTS UNDERLYING THE CLAIM OR CAUSE OF ACTION OCCURRED. Unless mutually agreed to by you and us, claims of two or more persons may not be joined, consolidated, or otherwise brought together in the same arbitration (unless those persons are joint account holders or beneficiaries on your account and/or related accounts, or parties to a single transaction or related transaction), whether or not the claim may have been assigned.

*Id*. at 2 (emphasis in original).

Accordingly, Plaintiff cannot proceed with his claims on behalf of the putative class either before this Court or in arbitration. The language of the Arbitration Agreement

explicitly prohibits class proceedings "in any arbitration or in any court proceeding." *Id*. Courts have repeatedly upheld similar class action waivers as valid and enforceable under the FAA. *See e.g., Barnett v. Concentrix Sols. Corp.,* No. CV-22-00266-PHX-DJH, 2022 WL 17486813, at *6 (D. Ariz. Dec. 7, 2022) (finding class action waiver enforceable); *Dismuke v. McClinton,* 670 F. App'x 210, 211 (5th Cir. 2016) ("class action waivers in arbitration agreements are enforceable"); *Kardonick v. Citigroup, Inc.,* 449 F. App'x 878 (11th Cir. 2011) (class action waivers are enforceable under the Federal Arbitration Act); *Zawada v. Uber Techs., Inc.,* No. 16-CV-11334, 2016 WL 7439198, at *8 (E.D. Mich. Dec. 27, 2016), *aff'd,* 727 F. App'x 839 (6th Cir. 2018) (explaining that "[t]he Supreme Court has held that class-action waivers in FAA-governed arbitration agreements are enforceable").

In sum, Plaintiff entered into a valid and binding arbitration agreement with GECU and Plaintiff's claims fall within the scope of that agreement. The Arbitration Agreement expressly bars Plaintiff from pursuing claims on a class-wide basis in any forum, including both arbitration and court proceedings. Therefore, this Court should enforce the Arbitration Agreement as written, dismiss Plaintiff's Complaint, and compel individual arbitration.

    6. <u>In the Alterative, this Action Should be Stayed Pending Completion of Arbitration</u>.

A court has discretion to dismiss an action where all issues raised in the action are arbitrable. *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1211 (D. Ariz. 2007); *see also Greenwood v. Mepamsa, SA,* No. CV-11-08040-SMM, 2011 WL 4801359, at *3 (D. Ariz. Oct. 11, 2011) ("the Ninth Circuit has held that the Court has discretion to dismiss specific claims if they are referable to arbitration"). Here, all of Plaintiff's claims are subject

to mandatory arbitration under the Arbitration Agreement. Accordingly, dismissal is appropriate.

Alternatively, if this action is not dismissed, all proceedings should be stayed pending the completion of arbitration. *See* 9 U.S.C. § 3 (requiring the stay of proceedings); *see also Smith v. Spizzirri,* 601 U.S. 472, 476 (2024) (Section 3 of the FAA requires a court to stay the proceeding "on application of one of the parties").[4]

## IV.   CONCLUSION

For the foregoing reasons, GECU respectfully requests that the Court grant its motion and compel Plaintiff to proceed in arbitration and dismiss the action in its entirety or, in the alternative, stay the case, until completion of arbitration. GECU further requests that the Court strike Plaintiff's class allegations pursuant to the parties' class action waiver.

**DATED** this 28th day of April, 2025.

**LITCHFIELD CAVO**

By:   */s/: Tico A. Glavas*
Tico A. Glavas
AZ Bar # 028812
7250 North 16th Street
Suite 105
Phoenix, AZ 85020
602.786.6499 P
602.429.8499 F
glavas@litchfieldcavo.com

---

[4] It remains to be seen whether Plaintiff will apply for a stay rather than dismissal.

James M. Branit (*pending pro hac vice*)
Natasha Singh (*pending pro hac vice*)
Kristopher Fernandez (*pending pro hac vice*)
303 W. Madison Street
Suite 300
Chicago, Illinois 60606
(312) 781-6597
branit@litchfieldcavo.com
singh@litchfieldcavo.com
fernandez@litchfieldcavo.com

*Attorneys for Defendant*

DEFENDANT GECU FEDERAL CREDIT UNION'S MOTION TO COMPEL ARBITRATION